to your supplemental briefs in two weeks. Our last case this morning is Cornielsen v. Infinium Capital Management. Mr. Volkler. May it please the court. Good afternoon. My name is Daniel J. Volkler and I'm the attorney representing the 35 plus plaintiffs in this litigation. The issue in this case, of course, is whether or not the district judge, the district court, correctly dismissed our fifth amended complaint. The court dismissed the complaint, finding that it did not state a cause of action for any of the claims asserted, including securities fraud, 10b-5, breach of fiduciary duty, and common law fraud. Of course, the pleading is to be judged under the 12b-6 standard as whether or not all the well-plea allegations state a cause of action. Of course, we assert that the complaint did state a cause of action, clearly stated a cause of action. The complaint alleges that my clients, who were employees of Infinium, one of the two Infinium entities, many of which had their life savings invested by way of loans to the company, were solicited to convert those loans and or to make additional investments into the employee capital pool through false and misleading statements. Those false and misleading statements caused the demise of Infinium, which two plus years after they made their investment, closed its doors and was sold. The representations are laid out in great detail in the complaint. Of course, we were not allowed any discovery in the case, although we asked for discovery on numerous occasions, but we did receive the benefit, obviously, of being able to interview former employees of the company, the CFO, those kinds of things. And we also benefited from the Securities and Exchange Commission, who was investigating Infinium, and invited us to a deposition of Gordon Wallace, one of the plaintiffs and my client, at which time we were shown very briefly a handful of documents the SEC had received from Infinium, which Infinium had provided purportedly to a subpoena, and were all stamped by Infinium not to be confidential, not to be shared for any purpose. Those documents, as laid out in detail in the complaint, were authored, received by the individual defendants in this case. And those documents, it's paragraph I think 104, lay out very specifically the fact that at the time my clients were solicited, Infinium was on the verge of bankruptcy. This is in the words of the individual defendants, that it was in dire financial condition that if it wasn't able to convince my clients, among other employees, to convert their debt to equity, the company would go under relatively quickly. The documents also showed, as pled in the complaint, that the so-called untapped $20 million line of credit with Fifth Third Bank, that was touted both in the PPM, as well as in the town hall meetings, as being untapped in the amount of $20 million and available to cover any issues that would arise in connection with the business of the company, as well as paying out Laurel and Hanley, who were withdrawing, was available. In fact, the documents showed that at the time my clients made their investment, that line of credit had already been tapped in the amount of $6 million. Counsel? Yes. Pursuant to the heightened pleading requirements of the PLSRA and Rule 9, you do have to say who made the misstatements. If your clients were at these town hall meetings, why couldn't they state with particularity, as they're required to do, who made the statements that misled? Well, they did, actually, Your Honor. What happened was the judge dismissed our fourth amendment complaint because she required that we do that specifically. So after doing some more due diligence, we did allege in the complaint the names of the individual defendants who actually made the statements at those town hall meetings, which were false and misleading. Well, you just listed the names. You didn't identify defendants to statements, and that's what the heightened pleading requirements mandate. Because they were all standing on the stage together, Your Honor. Right, but Rule 9B and the PLSRA require you to connect a statement to a defendant. I understand. Not just list all the names. Well, what we did was we talked to the 35-plus plaintiffs, Your Honor, and they identified all these individuals, these four individuals, who were management of the company, standing on the stage at the town hall meetings, making these statements to the audience. So each plaintiff had different recollections of which individuals had made the statements. There's nothing more we could do. Now, keep in mind, please, respectfully, that the transcripts of those proceedings were available. They were in the possession of the SEC. I saw them when I was there for the deposition. I was actually able to look at them briefly and connect some of the dots. But again, I was only allowed to look at the transcripts for, say, 15 minutes during a break. So we have done as much as is humanly possible. My clients didn't videotape these town hall meetings. They didn't record the town hall meetings. The company recorded the town hall meetings. But even if you assume the town hall meetings don't help us in any way, shape, or form in stating a claim, we still have misrepresentations contained in the PPM. The PPM says, for example, and the associated documents, that Infinium had $60 million in equity. They would have $60 million in equity after Laurel and Hanley had withdrawn. The truth of the matter is, and we've alleged this, and I think the district court had an obligation to accept well-pleaded facts as true, that, in fact, Infinium only had between $15 and $20 million of equity at the time it solicited my clients. That's clearly a false statement of fact. The lack of trading capital is what caused the demise of Infinium. The lack of equity is what caused the lack of trading capital. Furthermore, the PPM states specifically that they have an untapped $20 million line of credit for purposes of an emergency reserve in the event there are any problems. The fact of the matter is, before my clients put a dime, converted a dime of their loans into equity or made an additional investment into equity, that line had already been tapped because of a quote-unquote emergency. That's what appears in the SEC documents. So even if you accept the fact that the judge was right about the town hall meetings, and I suggest to the court that I think that's requiring pleading to a heightened standard that's just impossible under the circumstances because of the protection that was given to those transcripts of those town hall meetings. And we did plead the names of the people, and we are governed by Rule 11. If we say A, B, C, and D said these things at a town hall meeting, and we allege that, and we know it's false, then Rule 11 would govern. But you didn't say what A said or what B said or what C said. And I'm sympathetic to your not being able to get the transcripts, but the point of the heightened pleading requirement is to prevent a case from going into discovery if the plaintiff can't satisfy the heightened pleading request. They all said the same thing. They all said they had a $20 million untapped line of credit, which was false, number one. They all said there would be $60 million of equity at the time Laurel and Hanley withdrew and at the time my clients made their conversion, if they decided to do so, which was false. They all touted those two facts. I'll tell you another fact they touted. They touted the fact that if my clients invested on March 2nd of 2012, they would get the benefit of two free months of profits because profits are calculated on the calendar year. The fact of the matter was, and the documents support that, and I've alleged that in the complaint, that in January and February, Infidium lost $4.3 million. And the defendants knew that. Each of the individual defendants knew that. It's alleged in the complaint. It's in the SEC documents that I've seen with my very eyes and I've alleged in the complaint. So telling somebody you're going to get two free months of profits when there are no profits is another lie. And the lies go on and on and on. It's a material omission maybe, and so your argument is they had a duty to speak and they didn't tell you about the lost profits. Correct, Your Honor. So what is the basis of their duty to disclose? Well, their duty to disclose, anytime they make a statement that's false, they have a duty to correct it, otherwise it's a half-truth. If they make a statement that's just false, that's actionable. The fact that we were going to get the benefit of profits was false, and they knew it because there were no profits. There was no untapped $20 million line of credit. It had been tapped for emergency purposes. There wasn't $60 million of equity. There was between $15 and $20 million of equity. I'm trying to distinguish between the affirmative misrepresentations you say they made and then the material nondisclosure, so the failure to disclose. Sure. And as I understand it, you're alleging fraud in both, fraud in the material misrepresentations and fraud in the failure to disclose. So what is the failure to disclose, you're arguing, arises from the fact that they told you something, so they should have told you. Exactly. Because they told us, for example, they had an untapped $20 million line of credit. They should have told us it has been tapped. But that's a material misstatement if it had been tapped, and they said it's untapped. Telling us there's $60 million of equity when there's only $15 is another material misrepresentation of fact. We allege that in the complaint, and with all due respect to the district court, my understanding of the rule is the court should take well-pleaded allegations as true. This case was essentially decided as if it was up for summary judgment, and it is a very factually intensive complaint that alleges the omissions, alleges the reason why the omissions were they had a duty to speak because of what they said, and the case just plain should have moved forward. May I save the rest of my time for rebuttal? Yes, you may. Unless you have some questions. I think you've got some time left, yeah. Okay, thank you. Okay. Mr. Hawes. May it please the court. Matthew Hawes on behalf of the defendant of Helly's. The court should affirm the district court's dismissal of plaintiff's complaint for three reasons. First, the Fifth Amendment complaint fails to satisfy the exacting and specificity required of the PSLRA and Rule 9b. The plaintiffs did not plead who made which misstatement. They did not plead a strong inference of scienter, and they did not plead loss causation with any particularity. Second, each of the plaintiffs were given extensive disclosures in a private placement memoranda. These disclosures directly contradict plaintiff's claims that they were misled. Third, the explicit non-reliance clause in each of the plaintiff's subscription agreements bars their claim that they justifiably relied on prior oral statements made during a town hall meeting. First, as this court identified during a plaintiff's presentation, the plaintiff failed to plead which defendant made which individual statement. Well, if you have a group presentation and they're all adding statements, aren't they by not contradicting each other? I mean, aren't they all making those statements? That may be the case. I can see where you have just a statement off to the side. You have a private interview. But where it's a group presentation and they're all there making a presentation. It's not actually how it's been pled. In the complaint, they just allege that all of these officers were in the room or attended. Then they try to ascribe all of the allegations to all of the speakers. The interesting thing there is they don't even identify who the speaker is of the statement before they would go to the next level of ascribing to the other officers of Infinium. Of course, plaintiffs have 39 eyewitnesses for these town hall meetings in order to get an account of who said what. I think that the particularity requirements are pretty clear that a plaintiff needs to identify who made each misstatement. Ultimately, didn't they do that though? Didn't they essentially say each individual defendant made each individual statement? The district court obviously noted that that was not what the plaintiffs didn't plead that literally and they admitted to it. They pled that every defendant made every statement, but it was obvious that the plaintiffs had not intended to plead that every defendant made every statement. In fact, they conceded that today. What the district court noted because she had previously dismissed the second amended complaint for failure to identify who made the misstatements when the plaintiffs just used the term defendants or Infinium. Then plaintiffs in the fourth amended complaint did a find and replace of defendants and Infinium with the names of the individual officers, the individual defendants. The court rightly saw right through that gimmick to show that the plaintiffs were not pleading with any particularity to identify who made which misstatement. Obviously, the failure to identify who made which misstatement bleeds over into the analysis of whether plaintiffs pled a strong inference of scienter. Without identifying who made which misstatement, it's next to impossible to identify whether that person had the requisite state of mind. The only statement that plaintiffs ascribed to any individual defendant is a statement by Mr. Eichbusch, which they said that he stated that Infinium had access to an untapped credit line from Fifth Third Bank. But even with this statement, they failed to identify, they failed to plead any facts that would give rise to a strong inference that Mr. Eichbusch knew that statement to be false. They don't plead any facts regarding his access to information about their line of credit or that he knew that it was had been tapped at the time. More importantly, they don't allege that Mr. Eichbusch had any motive to lie to the plaintiffs. Mr. Eichbusch, like the plaintiffs, was becoming a Class B2 shareholder himself. He converted his debt in the firm to equity, just like the plaintiffs. So it would seem that he has a concrete reason not to lie to them, and certainly the plaintiffs haven't pled any facts to suggest otherwise. To round out the pleading failures, the plaintiffs also failed to plead loss causation with particularity. This court has said in Tricontinental v. PricewaterhouseCoopers that the particularity standard applies to this element. Here, the plaintiffs plead loss causation in only the most conclusory way. Paragraph 130, which is the entirety of their loss causation allegations, reads, The complete loss of plaintiffs' investments in the equity in Infinium is the direct and proximate result of, among other things, And then the plaintiffs lists off all of their grievances, all of the alleged misstatements, all of the omissions, without making any attempt to plead, as this court requires, that the very facts about which the defendant lied caused their injuries. Aside from the pleading deficiencies, the private placement memoranda that each of the plaintiffs received and acknowledged receiving contradicts several of the misstatements alleged by the plaintiffs. This court has long accepted the doctrine that a person who receives a written oral disclosure of the truth may not rely on contrary oral falsehoods. Here, the plaintiffs were provided with extensive risk disclosures. For example, they claim that they were promised that there would be one class of equity with equal rights during the town hall meeting. Yet the PPM discloses that the board has the right to sell or issue additional interests or other equity interests of the company to members or third parties on terms that may be senior to, junior to, or on parity with the terms, the interests held by the then current members. Then it goes on, such issuances may result in dilution of the capital members' percentage interests in the company. Similarly, with respect to their claim that they were guaranteed that they would be able to redeem their investment after one year, the PPM expressly warned plaintiffs that their rights to withdraw shall be subject to deferral or limitation in the event the board determines, acting reasonably and in good faith, that any requested withdrawal would cause the company to fail to maintain levels of capital necessary to meet any such requirement. Each of those PPM disclosures contradict plaintiffs' claims and applying this court's decision in Carr v. Cygnus to securities, the plaintiffs cannot rely on oral statements to the contrary, and the district court rightly noted that. Finally, the non-reliance clause in each of the plaintiffs' subscription agreements bars reliance on extra-contractual statements or oral statements made during the town hall. As this court held in Rissman v. Rissman, an explicit non-disclosure clause in a stock purchase agreement renders reliance on oral representations unreasonable as a matter of law in securities cases. Here, the plaintiffs each expressly acknowledged that the determination of the undersigned to purchase the interest has been made by the undersigned independent of any statements or opinions as to the advisability of that purchase. Then the non-reliance clause says no representations, warranties, or written communications with respect to the interest have been made to the undersigned and entering into this transaction the undersigned is not relying upon any information other than that contained in the LLC agreement, the joinder, and the results of the undersigned's own independent investigation. Similar clauses have been held both in Delaware and Illinois courts. Almost identical provisions have been held to bar claims of reliance on oral representations. Applying this court's holding in Rissman, this would be a straightforward application. Although the district court didn't reach it, this court certainly can. Are there any questions? We would ask that the court affirm. Thank you. Mr. Felker, anything further? I would just be brief. The loss causation issue is spelled out in the complaint. The loss causation is spelled out that the lack of trading capital for Infinium, the lack of equity, the lack of the so-called untapped line of credit, the nonexistence of that $80 million caused the company to go under because they didn't have any money to trade. When you can't trade, you can't make money as a trading company. So it's spelled out in detail. It's very simple, quite frankly. Now, the counsel said the court saw through the gimmick that we engaged in in connection with putting the actual individual's names in place of what was said. That's complete surmise. You can't determine something's a gimmick under 12B6. I mean, we've alleged these things under penalty rule 11. So our clients are telling us these people said these things about the line of credit and about the equity at these meetings and that they were all there at the meetings. So, I mean, a court can't just say that's a gimmick. That's a summary judgment characterization, not a characterization on a motion to dismiss. Finally, on CENTER, the documents that we've alleged, the content of those documents in paragraph 104 of the complaint lays out the intensive communication between the individual defendants before the solicitation, before the conversion of what they needed to do in order to save the company that was in dire financial straits, the verge of bankruptcy, didn't have enough money to trade, was tempted to shut its doors, had lost $4.3 million the first two months. You will have to wrap up because your time has expired. There is documentary proof of that, Your Honor. Thank you. All right, thank you. Our thanks to both counsel. The case is taken under advisement, and that concludes our calendar today. The court will be in recess. Thank you.